IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|  |  |  |
|---|---|---|
| ENERGY IP, LLC, AND<br>3RD DEGREE SPECIALTY TOOLS, LLC<br><br>*Plaintiffs*,<br>vs.<br><br><br>TENDEKA, INC., AND<br>INDUSTRIALIZATION ENERGY<br>& SERVICES COMPANY D/B/A TAQA<br><br>*Defendants*. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Case No. 4:26-cv-3516<br><br>Demand for Jury Trial |

**COMPLAINT AND APPLICATION FOR TEMPORARY AND PERMANENT INJUNCTION**

1.     Plaintiffs Energy IP, LLC and 3rd Degree Specialty Tools, LLC bring this action against Defendants Tendeka, Inc. and Industrialization Energy & Services Company d/b/a TAQA collectively ("Defendants").

**THE PARTIES**

2.     Energy IP, LLC ("EIP") is a limited liability company organized and existing under the laws of the State of Oklahoma and has its principal place of business at 1251 W Camellia Way, Mustang, Oklahoma.   The patent-in-suit is United States Patent No. US 10,787,880 ("the '880 Patent").   EIP owns the right, title, and interest in the '880 Patent via assignment from Steve Wehrenberg ("Wehrenberg").

3.     Plaintiff 3rd Degree Specialty Tools, LLC ("3D") is a limited liability company organized and existing under the laws of the State of Texas and has its principal place of business at 1728 Ed Kharbat Dr., Conroe, Texas.   3D has an exclusive, worldwide, perpetual, irrevocable license to practice the '880 Patent.

4925-0348-8422.2

4.      Defendant Tendeka, Inc. ("Tendeka") is a Delaware corporation with its principal place of business at 15995 North Barkers Landing Suite 250, Houston TX 77079.  Tendeka may be served through its registered agent, CT Corporation, 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

5.      Defendant Industrialization Energy & Services Company d/b/a TAQA ("TAQA") is a company formed under the Kingdom of Saudi Arabia and has its principal place of business in Dhahran, Saudi Arabia.  TAQA may be served by sending this complaint and the summons via registered mail to TAQA, Kingdom of Saudi Arabia, Eastern Province, Dhahran, King Fahd University of Petroleum and Minerals, DTV, Ibn Rashed St, 34464-4785.

SUMMARY

6.      Wehrenberg, an owner and representative of EIP, invented and developed proprietary and confidential intellectual property including information, know-how, methods and technologies for sealing perforation tunnels by pumping expandable material (swellable rubber) into a well via a carrier fluid to form an expandable fluid mixture (the "SwellFrac IP").  The swellable rubber is forced into oil and gas well perforation tunnels under a hold pressure to form plugs that seal the perforation tunnels in the well.

7.      Traditional methods to seal and isolate existing perforation tunnels involved setting a plug, straddling perforations, or cement, all of which are complex and very costly.  The SwellFrac IP is cost effective, and, prior to the invention of the SwellFrac IP, there were no other swellable rubber/compound solutions in the market designed or used to seal perforations.  The SwellFrac IP was new and revolutionary.

8.      Some of the SwellFrac IP was incorporated into the '880 Patent, which was issued on September 29, 2020.  However, some of the SwellFrac IP remains proprietary and confidential

4925-0348-8422.2

information, know-how, methods, and technologies that are trade secrets and/or confidential business information.

9.     EIP entered into written agreements with Tendeka regarding further development and use of the SwellFrac IP, including a license agreement dated June 3, 2021 (the "License Agreement"), and a supply agreement for EIP to purchase swellable rubber products from Tendeka (as opposed to from its competitors with similarly viable products) for use with the SwellFrac IP. EIP not only provided Tendeka with a license to use the '880 Patent, but EIP also disclosed to Tendeka proprietary and confidential information, know-how, methods and technologies beyond and outside the scope of the '880 Patent that constitute trade secrets and/or confidential business information (defined as "Technology" under the License Agreement).

10.    Prior to Tendeka's relationship with EIP, it had never used its swellable rubber product to fill and seal perforations.  Rather, its swellable material was used primarily for swell packers for zonal isolation between the casing and the wellbore.

11.    In February of 2022, TAQA acquired Tendeka and now describes it as a division of TAQA.  However, upon information and belief, TAQA acquired the shares of stock of Tendeka, Inc. and not the assets, and Tendeka is a subsidiary of TAQA and not a "division."  After the acquisition, Tendeka continued to enter into written agreements as a separate legal entity.

12.    Shortly thereafter in May of 2022, EIP terminated TAQA/Tendeka's right to use the SwellFrac IP.  Until recently, EIP assumed TAQA was not using the SwellFrac IP (which it no longer had a right to use).  However, EIP recently discovered that Defendants are selling and using a strikingly similar, if not identical, perforation-filling and sealing process under the name "SwellPlug" utilizing swellable rubber.  Upon information and belief, there is no possible way that Defendants can use the SwellPlug process without infringing on the '880 Patent and without using

4925-0348-8422.2

the SwellFrac IP not contained in the '880 Patent. No other company in the industry has or uses the SwellFrac IP (or swellable rubber to seal perforations at all), and Defendants never used swellable rubber to seal perforations until they licensed the SwellFrac IP from EIP.

13. Even worse, TAQA is lying to the market about its SwellPlug process. TAQA claims it developed the SwellPlug process and that it is patent protected, when it was developed by EIP and Wehrenberg, and when TAQA has no patent covering the methods and technologies it is using (EIP owns the '880 Patent). TAQA is also misrepresenting to the market that it used the SwellPlug methods and technology in several case studies, when in fact, those jobs were performed by EIP using the SwellFrac IP. And TAQA has been using EIP videos and materials on its website and for marketing purposes. In other words, TAQA is unlawfully and unfairly marketing its SwellPlug process in addition to its unlawful infringement of the '880 Patent and its unlawful use of EIP's SwellFrac IP.

14. EIP and 3D bring this action for patent infringement, breach of contract for use of the SwellFrac IP, unfair competition, and for copyright violations and seek damages and injunctive relief against Defendants.

JURISDICTION AND VENUE

15. This case includes an action for patent infringement arising under the provisions of the Patent Laws of the United States of America, Title 35, United States Code. In addition, EIP's asserts causes of action under the Copyright Act, 17 U.S.C. §§ 101 *et seq*., the Lanham Act, 15 U.S.C. §§ 1051 *et seq*., and Texas common law. Accordingly, this Court has subject matter jurisdiction over this case under 28 U.S.C. §§ 1331, 1338, 1391, and 1400(a).

16. Defendants have made, used, sold, offered for sale, and/or imported products accused of infringement in this Complaint in the State of Texas and in this District, and/or have

4925-0348-8422.2

placed such products into the stream of commerce, which have been offered for sale, sold, and/or used in the State of Texas and in this District. Defendants are doing business in this District, and this Court has personal jurisdiction over Defendants.

17.     Tendeka's principal place of business is in Houston and in this District and venue as to Tendeka is proper under 28 U.S.C. § 1400(b).

18.     TAQA, both through Tendeka and independently, has solicited business in the State of Texas, transacted business within the State of Texas, and/or attempted to derive financial benefit from the residents of the State of Texas, including business and/or benefits directly related to the instant patent infringement, unfair competition, and copyright infringement causes of action set forth herein.

## BACKGROUND FACTS

### THE PARTIES

19.     Wehrenberg is a seasoned professional with more than thirty-eight (38) years of specialized experience in the oil and gas industry, with particular expertise in well control, pressure management, oil well firefighting, and the development of innovative technologies for complex operational challenges. Wehrenberg founded Energy IP in 2017 to commercialize his intellectual property portfolio.

20.     EIP specializes in providing innovative solutions for the oil and gas industry, including but not limited to refracturing technology, well control solutions, well blowout protocols, and meter data management.

21.     Wehrenberg and Stephen Knight became 50/50 partners of EIP in 2023, when Knight acquired half-ownership of the company. In January of 2026, 3D purchased Knight's 50%

4925-0348-8422.2

of EIP as part of a larger transaction that included the grant of an exclusive license to use the '880 Patent and the SwellFrac IP.

22.     3D is dedicated to revolutionizing the oil and gas industry through innovative tooling solutions emphasizing safety, efficiency, and performance and offers a comprehensive suite of services designed to address the challenges of wellhead intervention and maintenance.

23.     In 2017, Tendeka was a UK-based engineering and manufacturing company that held itself out as offering reservoir monitoring and control, advanced lower completions, and production optimization technologies, and that could deliver innovative, stand-alone completion products, including elastomer compounds.

24.     TAQA holds itself out as a leader in energy solutions that employs more than 5,000 people, from 76 different nationalities, across 20 different countries, serving the second largest well services market in the world.  TAQA offers a wide range of drilling, well completions, and intervention services globally, including coiled tubing, well stimulation, cementing, wireline, frac, directional drilling, downhole tools, completions, well testing, slickline, inspection, and H2S & safety.

25.     As mentioned, TAQA acquired Tendeka in February 2022 and now describes it as a division of TAQA.  However, upon information and belief, TAQA acquired the shares of stock of Tendeka, Inc. and not the assets, and Tendeka is a subsidiary of TAQA and not a "division."  After the acquisition, Tendeka continued to enter into written agreements as a separate legal entity, such as the Supply Agreement with EIP.

4925-0348-8422.2

**THE SWELLFRAC IP**

26.     As early as 2017, Wehrenberg realized that the traditional methods to seal and isolate existing perforations that involved setting a plug, straddling perforations, or use of cement, were all very complex and expensive, and he believed that it could be extremely valuable to develop a method, which was not available in the market, to seal perforations using a swellable elastomer compound.  Wehrenberg spent years and a material investment of time and money to research, test and develop the methods and processes to inject swellable elastomer rubber particles into a well through a carrier fluid to seal perforations after being held in place to cure by pressure. Through his continued efforts, Wehrenberg further refined these methods and processes to produce optimal performance under different conditions. The SwellFrac IP is the result of those efforts, and it is much more cost effective and much less complex than the other options to isolate perforation tunnels that existed prior to this invention.  The SwellFrac IP was new and revolutionary.

27.     While nobody in the market was using swellable rubber to seal perforation tunnels in 2017, there were more than twenty-five (25) swellable rubber products available and being used in other well applications, including swell packers to isolate the casing from the well bore.

**THE WWIP/SWELLFIX NDA**

28.     Wehrenberg identified Tendeka as one of the companies that had a suitable swellable rubber for the SwellFrac IP, and he approached Tendeka and its parent company, Swellfix UK, regarding using Tendeka's products for the application of swellable elastomer particles in the wellbore to seal and isolate perforation tunnels.  At that time, Wehrenberg was operating under WWIP, LLC ("WWIP"), and WWIP entered into a Mutual Non-Disclosure Agreement with Swellfix UK dated October 27, 2017, for this use.

**EIP CONFIDENTIALLY DISCLOSED THE SWELLFRAC IP TO TENDEKA**

29.    From 2017 forward, Wehrenberg disclosed the SwellFrac IP to Tendeka as he continued to invent, develop, test, and refine the methods and technologies for same.  At all relevant times, the parties understood and agreed that Wehrenberg disclosed the SwellFrac IP to Tendeka on a confidential basis.  The SwellFrac IP disclosed to Tendeka included, but was not limited to, the grinding of swellable rubber product (then Tendeka's) into optimal particle shapes and sizes, particle distribution ratio, "pumping on the fly," the carrier fluid used for the particles and its characteristics that can affect the rate to cause the particles to swell, pressures and temperatures used, and deployment methods.

**THE '880 PATENT**

30.    At the same time Wehrenberg was working with Tendeka to further develop and refine the SwellFrac IP, he applied for a patent to cover the fundamental methods and technologies of the SwellFrac IP.  After considerable time and expense, and after the application was modified and updated, the USPTO duly and legally approved and issued the '880 Patent to Wehrenberg on September 29, 2020, entitled "METHOD FOR SEALING PERFORATION TUNNELS WITH SWELLING ELASTOMER MATERIAL." *See Exhibit 1.*

31.    All of WWIP and/or Wehrenberg's right, title, and interest  in the SwellFrac IP and the '880 Patent has been assigned to EIP, and EIP owns all right, title, and interest in the SwellFrac IP and the '880 Patent, including the right to sue for and recover all past, present, and future damages for infringement of the '880 Patent. 3D is the exclusive licensee of the SwellFrac IP.

4925-0348-8422.2

**THE LICENSE AGREEMENT**

32.    As part of Wehrenberg and EIP's continuing efforts to develop, refine, and commercialize the SwellFrac IP, and because Tendeka wanted to license and use the '880 Patent and the SwellFrac IP, EIP and Tendeka entered into the License Agreement dated June 3, 2021. *See Exhibit 2.* The parties understood and expressly agreed that the SwellFrac IP included more than just the right to use the methods and technologies covered by the '880 Patent. In addition to defining "Patent," the License Agreement defined "Technology" to mean "the proprietary information, know-how, and trade secrets owned by [EIP] that are useful in practicing the inventions covered by the Patent as detailed in Schedule 2." *See Exhibit 2, Section 1.1.*

33.    The License Agreement defines "Confidential Information" to include all confidential information disclosed (including anything a reasonable businessperson would consider confidential), whether ***before*** or after the date of the agreement, and in connection with the terms of the agreement, the Technology and all other know-how relating to the manufacture or sell of the Products. *See Exhibit 2, Section 6.1.* The License Agreement defines "Intellectual Property" to include both the Patent and the Technology. *See Exhibit 2, Section 6.1.*

34.    The License Agreement granted Tendeka a worldwide and exclusive license under the Intellectual Property to use all processes to which the Patent ***and*** Technology relate. *See Exhibit 2, Section 2.1.* In other words, the License Agreement expressly included all SwellFrac IP that was not part of the '880 Patent, including any confidential information provided by EIP to Tendeka ***prior*** to the Effective Date of the License Agreement.

35.    Of course, the License Agreement required Tendeka to maintain confidentiality of the Confidential Information relating to the SwellFrac IP and prohibits Tendeka from using such information except in connection with the License Agreement. *See Exhibit 2, Section 6.3.*

**TERMINATION OF THE LICENSE AGREEMENT**

36.      Section 8.1 of the License Agreement allows either party to terminate in the event the Field Trial defined therein had not commenced within 270 days of the Effective Date.  By letter dated May 16, 2022, Tendeka exercised the right to terminate the License Agreement because the Field Trial had not commenced within such time frame.  Wehrenberg signed the letter agreement on behalf of EIP to acknowledge and confirm its contents.  *See Exhibit 3*.

37.      Tendeka represented to EIP that it was not using the Patent or the Technology as defined in the License Agreement.  As such, the parties confirmed and agreed in the termination letter that no royalties or fees were due by Tendeka.  In addition, pursuant to Section 17.1 of the License Agreement, Tendeka agreed it would immediately cease exploitation of the Patent and Technology and any other know-how provided by EIP to Tendeka, unless it ceased to be confidential.

**DEFENDANTS BID ON CONOCO PROJECT WITHOUT EIP'S KNOWLEDGE OR CONSENT AND TRY TO DECEPTIVELY OBTAIN ASSIGNMENT OF THE SWELLFRAC IP**

38.      In September of 2024, an opportunity arose for EIP to use the SwellFrac IP for a job with Conoco, and EIP made a proposal for the job.  However, Tendeka initially tried to take this job away from EIP by telling Conoco that any job using the Tendeka SwellPlug product had to be performed by Tendeka.  When Conoco relayed this to Wehrenberg, he confronted Lisa Blankenburg, North American Technical Sales Director of TAQA, because Defendants had no right at that time to use the SwellFrac IP without EIP's consent.  Blankenburg and Defendants then agreed and evidently corrected their misrepresentation to Conoco because Conoco thereafter continued discussing the proposed job with EIP.

39.      However, when EIP tried to obtain the job, it was unable to do so because it did not have a Master Service Agreement ("MSA") with Conoco, which Conoco required.   Tendeka

4925-0348-8422.2

had an MSA with Conoco and offered to enter into a "subcontractor agreement" with EIP that would allow EIP to use the SwellFrac IP to provide goods and services to Conoco and to bill for them under Tendeka's MSA.

40.    When Tendeka presented the proposed "Consultancy Agreement" to EIP, Wehrenberg noticed it contained a clause that would assign EIP's intellectual property relating to the SwellFrac IP to Tendeka (including future improvements), which was not discussed or contemplated. *See Exhibit 4.*

41.    Wehrenberg was upset, and he again confronted Blankenburg about this underhanded attempt to obtain an assignment of the SwellFrac IP by slipping an assignment provision into what was supposed to be only a subcontractor agreement for the Conoco job. Defendants denied that the proposed language would assign the SwellFrac IP and insisted it was ok for EIP to sign.  However, EIP refused to sign the agreement and declined to work with Defendants to pursue the Conoco job.

42.    Of course, the proposed Consultancy Agreement clearly shows that Defendants knew EIP owned the SwellFrac IP, and it shows they knew they needed the SwellFrac IP to use swellable rubber to seal perforations.

43.    However, Defendants continued to deny that was the case.  Thereafter, at a meeting on January 8, 2025, Alan Pearson, President of Tendeka, told Wehrenberg that he thought Tendeka could "get around" the '880 Patent.  Wehrenberg told Pearson he disagreed and later let Blankenburg know he was upset about what Pearson had said and impliedly threatened.

**THE EXECUTION AND TERMINATION OF THE SUPPLY AGREEMENT**

44.    In furtherance of trying to commercialize the SwellFrac IP, EIP entered into a Supply Agreement with Tendeka dated May 1, 2024, to purchase swellable elastomer products

that would be used to provide the SwellFrac IP to customers (the "Supply Agreement"). The Supply Agreement contained a Minimum Purchase Target of $750,000 by July 1, 2024 (60 days) and granted Tendeka the right terminate if the Minimum Purchase Target was not achieved. When EIP failed to achieve the Minimum Purchase Target, Tendeka terminated the Supply Agreement on January 29, 2025, and the parties' business relationship terminated.

45.    In an effort to establish a clean separation, EIP's attorney responded to Tendeka's termination letter via a letter sent to TAQA and Tendeka dated March 10, 2025. *See Exhibit 5*. EIP noted that TAQA/Tendeka was continuing to advertise the SwellFrac patented technology on the TAQA website in violation of the License Agreement and requested TAQA/Tendeka to immediately cease and desist such use. EIP demanded that TAQA/Tendeka refrain from using any of the methods covered by the '880 Patent as such unauthorized use would constitute patent infringement. EIP further advised that TAQA had recently published a video promoting its "SwellPlug technology" that appeared to be based on EIP's promotional video for its SwellFrac technology, attached an exhibit to the letter illustrating the misuse, and demanded TAQA/Tendeka cease use of the promotional video. *See Exhibit A to Exhibit 5*. EIP's promotional video (the "EIP Video") has been registered with the United States Register of Copyrights under Registration Number PA-2-515-871. *See Exhibit 6 attached hereto*. Some examples of the improper use are set forth below:



Energy IP

TAQA

Energy IP

TAQA

Energy IP

TAQA

Energy IP

TAQA



46.     TAQA responded by letter dated March 20, 2025, asserting the failure to remove the reference to SwellFrac was an oversight and would be corrected, that TAQA had not and would not infringe on the '880 Patent, that the methods in the '880 Patent were never utilized by Tendeka when the License Agreement was in place, and that the TAQA video was not derived from the SwellFrac video. *See Exhibit 7.*

### RECENT DISCOVERY THAT DEFENDANTS ARE USING THE SWELLFRAC IP, INFRINGING ON THE '880 PATENT, AND COMPETING UNFAIRLY

47.     EIP assumed TAQA's representations were true and that it was not using the SwellFrac IP or infringing on the '880 Patent.  However, EIP made a proposal to a customer on or about March 23, 2026, only to have the customer tell EIP that TAQA/Tendeka had just made a very similar proposal.  It is EIP's belief that key principles of physics (Newtonian and Hydrostatic) and laws (Stokes' law drag + Newtonian incompressibility) render it impossible for TAQA/Tendeka to employ any methods or technologies to seal perforation tunnels using swellable elastomer particles without infringing on the '880 Patent. Further, EIP believes the specific methodology and techniques TAQA/Tendeka purports to practice would be impossible to realize

without using the SwellFrac IP and Confidential Information not covered by the '880 Patent, which is defined as "Technology" under the License Agreement

48.     As a result, EIP and its new 50% owner, 3D, started investigating what services TAQA/Tendeka were offering related to the SwellFrac IP.  Plaintiffs confirmed that TAQA is offering for sale its "SwellPlug technology" that is remarkably similar, if not identical to the SwellFrac IP and the methods covered by the '880 Patent.  And worse, Plaintiffs discovered that TAQA/Tendeka are making misrepresentations regarding the alleged "SwellPlug technology" to compete unfairly with EIP.

49.     For example, TAQA's website at www.tq.com/solutions/taqas-completion-division/completion-fluids/sealing-solutions/swellplug/ (SwellPlug - TAQA) contains the following statement:

> **OVERVIEW**
>
> Throughout the life of a well, it may be necessary to isolate existing perforations for the purpose of re-completing an alternative section of the wellbore or to prevent water from being produced.
>
> Traditional methods involve setting a plug, straddling the perforations or performing a cement squeeze, all of which can be complex and costly and in the case of a straddle, result in a reduced ID wellbore.
>
> To solve this challenge, TAQA has developed SwellPlug, a cost effective, low complexity, patent protected method that isolates existing perforations and allows water shut off or re-completion to occur. SwellPlug uses TAQA's patented, field proven swelling elastomer technology.

50.     In addition, Blankenburg recently authored a paper entitled "Latest advancements in well integrity and refract operations using SwellPlug technology."  *See Exhibit 8*. Blankenburg's description of the "SwellPlug technology" is basically the same as the SwellFrac IP.

51.     Defendants' website and promotional materials contain material misrepresentations to the market.  Defendants claim they developed the "SwellPlug technology"

and it is proprietary, which is not true.  Defendants claim the "SwellPlug technology" is patented, which is not true.  Blankenburg and TAQA are representing that TAQA has a prior case history of proven and successful use of its "SwellPlug technology."  *See Exhibits 8, 9 and 10.*  However, the case histories that Defendants are pawning as their own are based on jobs performed by EIP (not TAQA) using the SwellFrac IP and the '880 Patent (not the "SwellPlug technology")[1].  These EIP case histories were previously formalized into marketing pieces by EIP before they were copied by Defendants and misrepresented as their own.  *See Exhibits 11 and 12.*

52.    By just reading and comparing the similarities in the EIP case histories to the ones being used by Defendants on their website, it is obvious that Defendants copied and used the EIP case histories as their own.  However, if the general similarities in the location, parties, circumstances, etc. are not enough to confirm the misuse, the fact that Defendants accidentally left a reference to SwellFrac in one of "their" case histories leaves no doubt:



*See Exhibit 9.*

---

[1] Defendants' own conflation of the SwellFrac IP and the "SwellPlug technology" is effectively an admission that the processes are functionally identical and, thus, that any use of the "SwellPlug technology" necessarily infringes the '880 Patent and utilizes the SwellFrac IP.

## COUNT I: PATENT INFRINGEMENT

53.     The '880 Patent is presumed valid.  Defendants use of their "SwellPlug technology" directly and/or indirectly infringes one or more claims of the '880 Patent, literally or under the doctrine of equivalents.  Defendants are liable for infringement of the '880 Patent pursuant to 35 U.S.C. § 271.

54.     As a result of Defendants' infringement, EIP and 3D have been and continue to be irreparably damaged and in the absence of injunctive relief; the remedies at law are inadequate to fully address or prevent further injuries caused by Defendants' infringement; the balance of equities tips in EIP and 3D's favor; and an injunction is in the public's interest.  As such EIP and 3D request that Defendants be temporarily and permanently enjoined from committing any acts declared by the Court to constitute infringement under 35 U.S.C § 271.

55.     Pursuant to 35 U.S.C. § 284, EIP and 3D are entitled to recover damages adequate to compensate for Defendants' infringement of the '880 Patent.

56.     On information and belief, EIP and 3D's damages caused by Defendants' infringement exceed $1,000,000.00.

## COUNT II: BREACH OF CONTRACT

57.     Tendeka's use of the Technology as defined in the License Agreement is prohibited by the License Agreement and is a material breach of the License Agreement.  Even if Tendeka is not infringing on the '880 Patent (which Plaintiffs do not believe is possible), Tendeka's continued use of the Technology and know-how that is not covered by the Patent is a breach of the License Agreement.  As a result of such breach, EIP has incurred damages for which it now sues.

4925-0348-8422.2

58.     Tendeka's disclosure of the Technology to TAQA is also a breach of the License Agreement.  As a result of such breach, EIP has incurred damages for which it now sues.

### COUNT III: FALSE ADVERTISING UNDER 15 U.S.C. § 1125(A)

59.     Defendants' unauthorized use of the EIP Video, their misrepresentations that the "SwellPlug technology" is proprietary and patented, and their misrepresentations that two case histories represent their own successful use of the "SwellPlug technology," constitutes false or misleading descriptions of fact, or false or misleading representations of fact, that misrepresent the nature, characteristics, qualities, or geographic origin of Defendants' goods, services, or commercial activities.

60.     The misrepresentations by Defendants are material and likely to influence purchasing decisions about Defendants' products and services.

61.     Upon information and belief, Defendants willfully engaged in the foregoing conduct with the intent to misrepresent Defendants' products and services.

62.     Defendants' misrepresentations constitute false advertising in violation of 15 U.S.C. § 1125(a).

63.     Defendants' actions have caused and will cause irreparable harm and damage to EIP and have caused and will cause EIP to suffer monetary damage in an amount to be determined.

64.     Defendants' actions will continue to damage EIP unless enjoined by this Court, and EIP has no adequate remedy at law.

### COUNT IV: UNFAIR COMPETITION UNDER TEXAS COMMON LAW

65.     The allegations of copyright infringement and false advertising constitute unfair competition under Texas common law.

4925-0348-8422.2

66.     Upon information and belief, Defendants willfully engaged in the foregoing conduct with the intent to cause confusion, mistake, or to deceive.

67.     Defendants' actions have caused and will cause irreparable harm and damage to EIP and have caused and will cause EIP to suffer monetary damage in an amount to be determined.

68.     Defendants' actions will continue to damage EIP unless enjoined by this Court, and EIP has no adequate remedy at law.

### COUNT V: COPYRIGHT INFRINGEMENT

69.     EIP owns a valid and enforceable copyright in the EIP Video, which is registered with the United States Register of Copyrights under Registration No. PA-2-515-871. Defendants' promotional video contains significant portions that are nearly identical to the EIP Video. Defendants had access to the EIP Video, which is publicly available, and Defendants directly copied and/or derived their own promotional video from the EIP Video, as evidenced by the similarities between the EIP Video and Defendants' video. Defendants' video is being used on the TAQA website and/or in promotional materials provided to customers.

70.     Defendants' copying of the EIP Video has been at all times and continues to be unauthorized and constitutes copyright infringement under 17 U.S.C. §501.

71.     EIP is entitled to damages under 17 U.S.C. § 504(b) in an amount to be proven at trial, including EIP's actual damages as a result of Defendants' infringement and any profits of Defendants that are attributable to the infringement and are not considered in computing the actual damages.

72.     EIP is entitled to statutory damages under 17 U.S.C. § 504(c) up to the statutory maximum for each work willfully infringed by Defendants.

4925-0348-8422.2

73.    EIP is also entitled to injunctive relief pursuant to 17 U.S.C. § 502 and to an order impounding or destroying any and all infringing materials pursuant to 17 U.S.C. § 503.

74.    Defendants' infringement of EIP's exclusive rights have caused EIP irreparable injury.  EIP's remedies at law are not adequate to compensate it for these injuries.

### PRAYER FOR RELIEF

75.    Plaintiffs EIP and 3D pray for entry of judgment on all causes of action asserted herein and for the following:

A.    A ruling that Defendants have directly and/or indirectly infringed the '880 Patent;

B.    Damages for Defendants' wrongful conduct, which may include lost profits or, at a minimum, a reasonable royalty;

C.    Temporary and permanent injunction against Defendants and their respective owners, partners, agents, employees, representatives, successors, assigns, parent companies, subsidiaries, and all affiliates, if any, as well as those in privity with Defendants and those who have acted in concert with Defendants, from:

     i.    use or disclosure of the SwellFrac IP;

     ii.    infringement of the '880 Patent;

     iii.    assertion of ownership of the SwellFrac IP;

     iv.    using the Technology as defined in the License Agreement;

     v.    making misrepresentations about the SwellPlug product and process;

     vi.    use of the EIP case histories and the EIP video

D.    Enhanced damages pursuant to 35 U.S.C. § 284 because of Defendants' willful infringement of the '880 Patent;

E.    Pre-judgment and post-judgment interest on all damages at the maximum rate allowed by law;

4925-0348-8422.2

F.       Attorneys' fees as an exceptional case under 35 U.S.C. § 285, for breach of

contract under Chapter 38 of the Texas Civil Practice and Remedies Code;

G.       Costs; and

H.       Such other and further relief as the Court may deem just and proper under the

circumstances.

### DEMAND FOR JURY TRIAL

Plaintiffs demand trial by jury on all claims and issues so triable.

Respectfully submitted,

**GRAY REED**

By: */s/ Scott Funk*
Scott Funk (Attorney-in-Charge)
State Bar No.: 7550900
sfunk@grayreed.com
Jonathan M. Hyman
State Bar  No. 24032455
Alexander Uber
State Bar No. 24089143
auber@grayreed.com
1300 Post Oak Blvd., Suite 2000
Houston, Texas 77056
Telephone: (713) 986-7000
Facsimile: (713) 986-7100

**COUNSEL FOR PLAINTIFFS
ENERGY IP, LLC AND 3RD DEGREE
SPECIALTY TOOLS, LLC**

4925-0348-8422.2